# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES GALEN HANNA,

                    Petitioner,           :     Case No. 3:19-cv-231

      - vs -                           District Judge Thomas M. Rose
                                             Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

                                   :

                    Respondent.

---

# TRANSFER ORDER

---

This capital habeas corpus case is before the Court on Respondent's Motion to Transfer this case to the Sixth Circuit Court of Appeals for a determination under 28 U.S.C. § 2244(b) of whether Petitioner may proceed in this Court (ECF No. 11). Petitioner opposes the Motion (ECF No. 15) and the Warden has filed a Reply in support (ECF No. 16).

Hanna challenged his conviction and capital sentence in a first-in-time habeas application, *Hanna v. Ishee*, Case No. 1:03-cv-801, 2009 WL 485487 (S.D. Ohio Feb. 26, 2009) (Rose, J.), denial of habeas corpus relief affirmed, 694 F.3d 596 (6th Cir. 2012), cert. denied, 571 U.S. 844, 134 S. Ct. 101 (Mem) (2013). The instant Petition is plainly Hanna's second-in-time Petition challenging that conviction and sentence. He has not sought circuit court permission to proceed and claimed in the Petition that this was not a second-or-successive petition requiring that permission (ECF No. 1, PageID 45-51). Because Hanna's theory is novel and the Court did not

consider it appropriate to decide that question merely on Hanna's argument, it ordered Respondent

to reply to that argument, which resulted in the Motion *sub judice*.


**Hanna's Litigation Situation**


Hanna was convicted of aggravated murder with capital specifications and sentenced to

death on November 20, 1998. 2009 WL 485487, at *3. He completed appeals on his first federal

habeas Petition in 2013. Thereafter the Supreme Court of Ohio, set an execution date. Most

recently on September 1, 2017, that date was reprieved to December 11, 2019. *In re Ohio*

*Execution Protocol Litig.*, Case No. 2:11-cv-1016, (consolidated method of execution case under

42 U.S.C. § 1983), Notice of Reprieve, ECF No. 1193-1. Hanna has a preliminary injunction

hearing set for September 24-October 3, 2019. He has been a plaintiff in that case since it was

filed as a consolidated matter in November 2011. He filed the instant Petition August 5, 2019,

through the same Assistant Federal Public Defenders who represent him in that case.

In the instant Petition, Hanna pleads the following grounds for relief:

> **Claim IV.A** – In violation of the Sixth and Fourteenth Amendments,
> trial counsel ineffectively failed to secure and present mitigating
> neuroimaging evidence to the jury, including PET (positron
> emission tomography) and MRI (magnetic resonance imaging)
> scans to objectively prove Hanna's brain damage and its effects
> upon his behavior.

> **Claim IV.B** – In violation of the Sixth and Fourteenth Amendments,
> trial counsel ineffectively failed to investigate and present
> mitigating evidence that numerous predators inflicted horrific
> sexual abuse upon James Hanna since the time he was a child, that
> Hanna suffered severe complex trauma, and that as a result, he
> suffered at the time of the offense the severe mental illnesses of post-
> traumatic stress (PTSD), depression, and borderline personality
> disorder.

**Claim IV.C** – In violation of the Sixth and Fourteenth Amendments, trial counsel ineffectively failed to investigate and present mitigating proof that James Hanna suffers a serious mental disorder caused by brain damage, including damage in his frontal and temporal lobes.

**Claim IV.D** – In violation of the Sixth, Eighth, and Fourteenth Amendments, the cumulative effect of the errors alleged in this petition deprived James Hanna of a fair and reliable sentencing hearing, thus entitling him to federal habeas corpus relief.

(ECF No. 1, PageID 18-19.)


**Excusing Conflicts of Interest Asserted in the Petition**


Hanna admits that these four claims are procedurally defaulted because they were not presented in Ohio postconviction proceedings under Ohio Revised Code § 2953.21 (Petition, ECF No. 1, PageID 4)[1]. He claims that default is excused by the ineffective assistance he received from postconviction counsel, relying on *Martinez v. Ryan*, 566 U.S. 1 (2012)[2]. The Petition asserts that Hanna was represented in his Ohio postconviction relief proceedings by Ohio Public Defender David Bodiker and two of his assistants, Susan Roche and Kathryn Sandford. *Id.* at PageID 12. After those proceedings were complete on appeal, Hanna filed for habeas corpus relief in this Court, represented again by Mr. Bodiker and his assistants Stephen Ferrell, Kelly Culshaw, and, from 2004 to 2007, Susan Roche. *Id.* at PageID 12-13.

The Petition claims it is not second-or-successive because it "does not constitute an 'abuse

---

[1] Under Ohio law, ineffective assistance of trial counsel claims of this nature would have to have been presented in postconviction because they could not have been proved from the record on direct appeal.
[2] The Sixth Circuit has never held that *Martinez* applies to Ohio's system for litigating claims of ineffective assistance of trial counsel. Indeed it has elided that question on a number of occasions. Judges of this Court have declined to decide whether *Martinez* applies to Ohio without guidance from the circuit court. While that question is clearly at issue in this case, it is not at issue on the present Motion to Transfer and purporting to decide it in a case where we lack jurisdiction because the Petition is second-or-successive would be an *ultra vires* act.

of the writ,'" (Petition, ECF No. 1, PageID 44, relying on *In re Bowen,* 436 F.3d 699, 704 (6th Cir.

2006); *Askew v. Bradshaw,* 646 F. App'x 342, 346 (6th Cir. 2016); *Tibbetts v. Warden*, 2017 WL

2364383 (S.D. Ohio May 26, 2017) (Dlott, J.).  That exception applies, Hanna pleads, because he

did not have a full and fair opportunity to litigate these four ineffective assistance of trial counsel

claims in his first Petition "because federal habeas counsel at that time labored under a conflict of

interest."  *Id.* at PageID 45.  Claiming the benefit of *Martinez*, Hanna asserts the ineffectiveness

of his post-conviction counsel in not raising these claims cures or excuses his procedural default

in not presenting them in that proceeding.  *Id.* at PageID 46, citing *Martinez*, 566 U.S. at 4, 14.

The conflict of interest which then occurred when the Ohio Public Defender's Office continued

the representation on federal habeas is said to violate Ohio Rule of Professional Conduct 1.7.  *Id.*

at PageID 47.  Other Assistant Ohio Public Defenders who appeared on Hanna's behalf in his first

habeas case – Rachel Troutman and Tyson Fleming – are said to have suffered from the same

conflict, the "vested interest" in not criticizing other members of one's own firm, risking the

"firm's" reputation and their own jobs as subordinates of Mr. Bodiker.  *Id.* at PageID 48-49.

Because conflicted counsel could not give Hanna a "full and fair opportunity" to litigate these

claims, he asserts the instant Petition must be treated as a first habeas application.  Indeed to fail

to do so would violate the Due Process, Equal Protection, and Suspension Clauses and 18 U.S.C.

§ 3599. *Id.* at PageID 51 n.8.


**The Parties' Positions on the Motion to Transfer**


In his Motion to Transfer, Warden Shoop distinguishes the *Bowen, Askew,* and *Tibbetts*

cases (ECF No. 11, PageID 688-91).  He asserts that the remainder of Hanna's arguments that this

Petition is not second-or-successive should be addressed by the Sixth Circuit. *Id.* at PageID 691-92).

Hanna's Response reiterates the conflicts-of-interest pleaded in the Petition and repeats his claim that, because of those conflicts, his instant Petition is not an abuse of the writ (ECF No. 15).

The Warden's Reply insists that because the instant Petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"), the abuse of writ doctrine does not apply (ECF No. 16, PageID 714, citing ); *In re Jones*, No. 19-1456, 2019 U.S. App. LEXIS 25515, at *2 (6th Cir. Aug. 23, 2019); *In re Moore*, No. 19-1203, 2019 U.S. App. LEXIS 20574, at *2-*3 (6th Cir. Jul. 10, 2019); *In re Morris*, No. 19-1081, 2019 U.S. App. LEXIS 13603, at *2-*3 (6th Cir. May 6, 2019).

# Analysis

A motion to transfer for a 28 U.S.C. § 2244(b) determination is a non-dispositive pre-trial motion on which a Magistrate Judge has authority to act in the first instance. 28 U.S.C. § 636(b)(1)(A). To protect Petitioner's right to review of this Order by an Article III judge, the effectiveness of the Order will be delayed to allow appeal to Judge Rose.

A federal court's first obligation on the filing of a new case is to assure itself that it has jurisdiction of the subject matter. A district court lacks jurisdiction to consider a second or successive habeas corpus petition without approval by the circuit court under 28 U.S.C. § 2244(b). *Burton v. Stewart*, 549 U.S. 147 (2007); *Franklin v. Jenkins*, 839 F.3d 465 (6th Cir. 2016). At the same time, the district court must make the determination in the first instance of whether a habeas

application is second or successive.  *In re Smith*, 690 F.3d 809 (6th Cir. 2012); *In re Sheppard*, No. 12-3399, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012).

At common law and in practice under federal habeas corpus statues before 1996, there was no numerical limit on the number of times a prisoner could apply for a writ of habeas corpus. Prisoners serving long sentences often filed repeated habeas corpus petitions raising the same claims or attacking the same conviction on new grounds.  To deal with the burden of this litigation, Rule 9(b) of the Rules Governing Section 2254 Cases formerly provided:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

While the language of Rule 9(b) would appear to be discretionary, the Supreme Court interpreted the abuse of writ doctrine as follows:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ.  The government satisfies this burden if, with clarity and particularity, it notes the petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ.  The burden to disprove abuse then becomes petitioner's.  To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions.  The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard.

*McCleskey v. Zant,* 499 U.S. 467, 494 (1991). See *1. Abuse of the Writ -- "Cause And Prejudice" Applied To Filing Of Subsequent Petition: McCleskey v. Zant*, 105 Harv. L. Rev. 319 (1991).

In an effort to reform habeas practice, Congress, in the AEDPA, amended 28 U.S.C. § 2244(b) to read as follows:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)

(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)
(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

The statute appears to contemplate that second petitions directed to the same conviction be presented first to the circuit court for permission to proceed. Shortly after AEDPA was adopted, the Sixth Circuit provided that, should a prisoner file in the district court without that permission, such petitions should be transferred to the circuit court. *In re Sims*, 111 F.3d 45 (6th Cir. 1997). However, if a district court is in doubt as to whether a particular petition is second or successive, it must make that determination in the first instance, rather than transferring the case for such an initial determination. *In re Smith*, 690 F.3d 809; *In re Sheppard*, 2012 U.S. App. LEXIS 13709.

At the same time, as discussed above, the appellate courts have held district courts have no jurisdiction to consider a second or successive petition without approval by the circuit court. *Burton v. Stewart*, 549 U.S. 147; *Franklin v. Jenkins*, 839 F.3d 465. In a capital case such as this one, that rule creates a grave risk to judicial economy. As the parties' positions on this issue make clear, it is often not a straightforward question whether a petition is second or successive or merely second-in-time. Since district courts are not prescient about how circuit courts will decide such questions, if they err on the side of permitting a second-in-time petition to proceed and the circuit court later concludes it was second-or-successive, they will have wasted considerable time, usually years in a capital case, in adjudicating matters over which they have no jurisdiction. On the other hand, if they err on the side of finding a second-in-time petition to be second-or-successive, the Sixth Circuit, usually very promptly, will correct that error and remand the case, holding

permission to proceed is unnecessary. See, e.g., *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015), citing *Howard v. United States*, 533 F.3d 472, 474 (6th Cir. 2008); *In re: Cedric E. Powell*, Case No. 16-3356, 2017 U.S. App. LEXIS 1032 (6th Cir. Jan. 6, 2017).

It is certainly true that not every second-in-time petition is properly classified as second or successive under § 2244(b). "Although Congress did not define the phrase 'second or successive,' . . . it is well settled that the phrase does not simply 'refe[r] to all § 2254 applications filed second or successively in time.'" *Magwood v. Patterson*, 561 U.S. 320, 331-32 (2010), quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). In *Panetti*, the Court allowed a petition raising claim under *Ford v. Wainright* that was not ripe at the time of a prior petition to proceed without satisfying § 2244(b). 551 U.S. at 946-47. In *Magwood* the Court excepted from § 2244(b) a second petition which challenged an intervening judgment in the state case. 561 U.S. at 339. In *King v. Morgan*, 807 F.3d 154, 155-56 (6th Cir. 2015), the court extended *Magwood* to the situation where a petitioner was challenging the same conviction but now embodied in a new judgment.

In *In re Bowen*,, relied on by Hanna, the Sixth Circuit found a second petition was not successive when it raised ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims which were not exhausted at the time of the first petition and before *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005)[3], allowed a stay and abeyance. 436 F.3d at 705-06. That circumstance does not apply here; Hanna's first petition was not dismissed because it was "mixed" in the *Rose v. Lundy* sense. And although Hanna has admittedly never presented these four claims of ineffective assistance of trial counsel to the Ohio courts, they are not "unexhausted"

---

[3] Before *Rhines* allowed such a stay, "mixed" petitions containing both exhausted and unexhausted claims were required to be dismissed under *Rose v. Lundy,* 455 U.S. 509 (1982). Prior to the AEDPA's adoption of the first statute of limitations applicable to habeas cases, dismissal without prejudice did not prevent a habeas petitioner from refiling once all of his or her claims were exhausted.

in the sense that he could now present them to those courts. Instead, they are procedurally defaulted because all of Hanna's opportunities to present them to the Ohio courts have expired.[4]

Hanna asserts his new Petition is not an "abuse of the writ" because he was prevented from bringing these claims earlier by his counsel's conflicts of interest. The Court believes that, if the abuse of writ doctrine still applied, it would be proper to find the instant Petition is not an abuse of the writ. But the abuse of writ doctrine does not apply here; that judge-crafted limitation on second petitions was replaced by the AEDPA. It is true as Judge Cole says in *Bowen* that courts have used the abuse of writ doctrine to analyze second or successive issues, 436 F.3d at 704 (citations omitted), but Hanna cites no authority that any petition which would have satisfied the abuse of writ doctrine is, by virtue of that fact, not second or successive. Congress did not incorporate the abuse of the writ doctrine into the AEDPA and the category of petitions that are not "abusive" under the doctrine is broader than the category of cases that are not second or successive under § 2244(b).

Probably the clearest example of a petition that would not have been an abuse of the writ and also not second-or-successive is provided in *Panetti*. There the Supreme Court held that 28 U.S.C. § 2244(b) did not bar a second-in-time petition raising a claim of incompetence to be executed that was filed "as soon as that claim [wa]s ripe." 551 U.S. at 945.

Hanna attempts to bring himself within this logic by claiming his ineffective assistance of trial counsel claims did not become ripe until he had conflict-free counsel who could plead them, to wit, his current counsel. The Magistrate Judge disagrees. These ineffective assistance of trial

---

[4] "A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). "First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule." *Id.* "Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule." *Id.*

counsel claims were ripe – in the sense that both the factual and legal bases of the claims were complete -- as soon as the trial was completed on November 20, 1998, the date on which he was sentenced to death. 2009 WL 485487, at *3. Because they depend on evidence outside the direct appeal record, they should have been brought, as he now acknowledges, in Hanna's postconviction petition which, at the time of his conviction, was required to be filed within 180 days of the filing of the appellate transcript[5].

Hanna did not raise these claims when they first became ripe. He asserts that failure was caused by ineffective assistance of postconviction counsel. He also did not raise them when he filed his first habeas Petition in 2007, allegedly because his habeas counsel behaved unethically in failing to raise the claims which would have damaged the reputation of their "firm," the Ohio Public Defender Office. The docket in in the first case shows the following termination dates for Ohio Public Defender lawyers: David Bodiker, February 16, 2008; Kelly Culshaw, February 2, 2004; Rachel Troutman, April 9, 2014; Stephen Ferrell, November 18, 2004; Susan Roche, January 26, 2007; Timothy Young, November 6, 2008; Tyson Fleming, April 9, 2014.

On February 10, 2014, Tyson Fleming and Rachel Troutman moved to substitute counsel, asking for independent counsel to perform "a *Martinez* review" as well as represent Hanna in clemency proceedings. They recognized the ethical problem now presented:

> [To] ensure that Hanna's interests are protected, Hanna should be appointed new counsel who is not employed by the Office of the Ohio Public Defender. This is because it is "ethically untenable to require counsel to assert claims of his or her own ineffectiveness in the state habeas proceedings in order to adequately present defaulted ineffective-assistance-of-trial-counsel claims under *Martinez* in the federal habeas proceedings." *Juniper v. Davis,* 737 F.3d 288, 290 (4th Cir. 2013).

---

[5] The Ohio General Assembly has doubled that time limit to one year since Hanna's conviction. Ohio Rev. Code § 2953.21(A)(2).

(Case No. 1:03-cv-801, ECF No. 153, PageID 2886). In deciding that Motion, the Magistrate Judge rejected Hanna's conflict of interest theory[6] but appointed new counsel any way to avoid the risk that the Sixth Circuit might later follow *Juniper*; new counsel were accordingly appointed: Kathleen McGarry as trial counsel and David Doughten as co-counsel (Supp. Opinion, ECF No. 158, PageID 2921). So as of April 3, 2014, Hanna had new counsel who were on notice to look for issues which might have been omitted in postconviction. On August 7, 2018, more than four years later, the Court permitted Ms. McGarry to withdraw upon her acceptance of new employment which was inconsistent with her remaining as counsel in this case; David Doughten remained as co-counsel (ECF Nos. 169, 170). The Federal Defender for the Southern District of Ohio was substituted as counsel in both this and the § 1983 case. (See Notation Order, ECF No. 170; and Notation Order, ECF No. 1902 in Case No. 2:11-cv-1016, substituting Allen L. Bohnert of the Federal Defender trial attorney).

Assuming the plausibility of Hanna's theory that his four ineffective assistance of trial counsel claims did not become ripe until he had conflict-free counsel, that occurred more than five years before he filed the instant Petition.

Hanna makes no claim that he is attacking an intervening judgment, so the *Magwood/King* exception is not available to him.


**Conclusion**


The Magistrate Judge concludes the instant Petition is second or successive. It is accordingly ordered that the Clerk transfer this case to the Sixth Circuit for a determination of

---

[6] Current counsel does not cite this prior ruling in the Memorandum in Opposition.

whether Petitioner may proceed.

Although the Court wishes to protect Hanna's right to Article III review before transfer, the imminence of his execution requires shortening the usual appeal period. Accordingly, the effectiveness of this Order is STAYED until noon on September 12, 2019, or such later date as Judge Rose resolves any objections filed by that time and date.

September 6, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge